UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ERICK ROJAS,

                                        Plaintiff,

        -against-                                           Case No. 24-CV-00772 (KPF)

DP HOSPITALITY GROUP, LLC, d/b/a
BROOKLYN CHOPHOUSE CITY HALL,
BROOKLYN CHOPHOUSE TIMES
SQUARE, LLC, DAVID THOMAS,
STRATIS MORFOGEN, and ROBERT
(DON POOH) CUMMINS,

                                        Defendants
----------------------------------------------------------------X

**DEFENDANTS' RESPONSE TO PLAINTIFF ERICK ROJAS'S
STATEMENT OF FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT PURSUANT TO LOCAL CIVIL RULE 56.1**

        Pursuant to Local Rule 56.1 of the United States District Court Southern District of New

York and the Court's  Individual Rules of Practice in Civil Cases, Defendants DP Hospitality

Group LLC ("City Hall location"), Brooklyn Chophouse Times Square, LLC ("Times Square

location"), David Thomas, Stratis Morgoen, and Robert Cummins (collectively "Defendants"), by

their attorneys Lewis Brisbois Bisgaard & Smith LLP, submit this response to Plaintiff's Rule 56.1

Statement of Facts in Support of Plaintiff's Motion for Partial Summary Judgment.[1]

---

[1] References to the "Wasserman Decl." refers to the Declaration of Bianca Wasserman in
Opposition of Plaintiff's Motion for Partial Summary Judgment filed herewith. References to the
"Leo Decl." refers to the Declaration of Chad Leo in Opposition of Plaintiff's Motion for Partial
Summary Judgment filed herewith.

**Defendants & Their Restaurants**

1.      Defendant DP Hospitality Group, LLC owns the Brooklyn Chophouse restaurant, City Hall location. Buzzard Decl., Ex. 1 (Morfogen Dep.) at 6:19-7:4; Buzzard Decl., Ex. 2 (Thomas Dep.) at 8:18-21; Buzzard Decl., Ex. 3 (Cummins Dep.) at 9:11-17 (clarifying that the City Hall location is also known as "Brooklyn Chophouse Fidi").

**Defendants' Response:** Defendants do not dispute this statement.

2.      Defendants David Thomas and Robert Cummins own Defendant DP Hospitality Group, LLC. Thomas Dep. at 9:3-20; Cummins Dep. at 10:5-13.

**Defendants' Response:** Defendants do not dispute this statement.

3.      Defendant Stratis Morfogen is the managing member of DP Hospitality Group, LLC and "oversee[s]" the general manager of the Brooklyn Chophouse City Hall location. Morfogen Dep. at 6:19-7:4.

**Defendants' Response:** Defendants do not dispute this statement.

4.      Defendants David Thomas, Robert Cummins, and Stratis Morfogen collectively hired the general manager of the City Hall location in 2018. Thomas Dep. at 22:18-23:9.

**Defendants' Response:** Defendants do not dispute this statement.

5.      Defendants David Thomas, Robert Cummins, and Stratis Morfogen collectively hired a manager named Melody at the City Hall location. Thomas Dep. at 23:17-24:10.

**Defendants' Response:** Defendants do not dispute this statement.

6.      Defendants Cummins and Thomas collectively decided to hire the current general manager of the City Hall location. Cummins Dep. at 17:7-24.

**Defendants' Response:** Defendants do not dispute this statement.

7.      After being hired, the general manager of the City Hall location was responsible for hiring all other restaurant employees. Cummins Dep. at 17:25-18:5.

**Defendants' Response:** Defendants do not dispute this statement.

8.      Defendant David Thomas had authority to hire the managers at the City Hall location who, in turn, hired other employees to work at that location. Thomas Dep. at 28:9-14.

**Defendants' Response:** Defendants do not dispute this statement.

9.      Defendant David Thomas had a decision-making role in hiring the chef at the City Hall location. Thomas Dep. at 28:15-18.

**Defendants' Response:** Defendants do not dispute this statement.

10.      Defendant David Thomas had a role in deciding how much the managers and chef at the City Hall location were paid. Thomas Dep. at 29:7-11.

**Defendants' Response:** Defendants do not dispute this statement.

11.      Defendant Brooklyn Chophouse Times Square, LLC owns the Brooklyn Chophouse restaurant, Times Square location. Cummins Dep. at 9:19-23; Buzzard Decl., Ex. 4 (Leo Dep.) at 9:5-9.

**Defendants' Response:** Defendants do not dispute this statement.

12.      Defendant Robert Cummins has an ownership interest in Defendant Brooklyn Chophouse Times Square, LLC. Cummins Dep. at 8:24-9:6, 9:19-10:4.

**Defendants' Response:** Defendants do not dispute this statement.

13.      Defendant David Thomas has an ownership interest in Defendant Brooklyn Chophouse Times Square, LLC. Thomas Dep. at 9:21-10:19.

**Defendants' Response:** Defendants do not dispute this statement.

14.    Defendant David Thomas had a role in the decision to pay Plaintiff a salary rather than an hourly wage. Thomas Dep. at 24:16-19.

**Defendants' Response:** Defendants do not dispute this statement.

15.    Defendant David Thomas had authority to set the amount of salary Plaintiff was paid. Thomas Dep. at 25:6-20.

**Defendants' Response:** Defendants do not dispute this statement.

16.    Defendant Robert Cummins had authority to set the amount of salary Plaintiff was paid. Thomas Dep. at 25:6-20.

**Defendants' Response:** Defendants do not dispute this statement.

17.    Defendant David Thomas had a role in the decision to hire Plaintiff to work at the Brooklyn Chophouse, Times Square location. Thomas Dep. at 31:16-19, 31:25-33:6.

**Defendants' Response:** Defendants do not dispute this statement.

18.    Defendant David Thomas had a role in the decision to terminate Plaintiff's employment from the Times Square location. Thomas Dep. at 47:5-10.

**Defendants' Response:** Defendants do not dispute this statement.

19.    Chad Leo has been the general manager of the Brooklyn Chophouse, Times Square Location since early 2023. Leo Dep. at 9:10-19.

**Defendants' Response:** Defendants do not dispute this statement.

20.    Before being hired, Leo was interviewed by Defendants David Thomas and Robert Cummins. Leo Dep. at 10:14-23.

**Defendants' Response:** Defendants do not dispute this statement.

21.    Defendant Stratis Morfogen also interviewed Leo during his interview process. Leo Dep. at 10:21-25.

**Defendants' Response:** Disputed. This misconstrues the cited testimony. Leo testified that he interviewed with Robert Cummins and David Thomas and "for a brief moment in the interview process, even Stratis joined the conversation." Leo Dep. 10:21-25.

22.    At the conclusion of the interview process, Defendant Robert Cummins offered Leo the position of general manager. Leo Dep. at 11:16-21.

**Defendants' Response:** Defendants do not dispute this statement.

23.    Defendants Cummins and David Thomas decided to hire Leo as general manager of the Times Square location. Cummins Dep. at 15:9-24.

**Defendants' Response:** Defendants do not dispute this statement.

24.    Defendants David Thomas and Robert Cummins are Leo's "bosses" who give him performance reviews and are in "constant communication[]" with him about management of the restaurant. Leo Dep. at 11:22-12:7.

**Defendants' Response:** Defendants do not dispute this statement.

25.    Defendants Robert Cummins and David Thomas approved Leo's decision to hire two lower-level managers at the Times Square location, "Larry" and "Kelly." Leo Dep. 14:17-15:17.

**Defendants' Response:** Disputed. The cited testimony does not support that Leo decided to hire Larry and Kelly. Leo testified that Larry and Kelly interviewed with Robert Cummins and David Thomas and he conducted the last interview with Larry and Kelly and told Cummins and Thomas that he thought Larry and Kelly would be good fits. Leo Dep. 14:17-15:13.

26.    Defendant David Thomas and Robert Cummins set the rates of pay of Leo and three other three managers of the Times Square location, "Kelly," "Larry," and "Junior." Leo Dep. at 16:19-17:1.

**Defendants' Response:** Defendants do not dispute this statement.

**Plaintiff's Employment at the City Hall Location**

27.     Defendant Stratis Morfogen testified as the designated corporate representative of Defendant DP Hospitality Group, LLC in this lawsuit. *See* Morfogen Dep. at 1, 21-22.

**Defendants' Response:** Defendants do not dispute this statement.

28.     Plaintiff began working at the Brooklyn Chophouse, City Hall location in October 2018. Morfogen Dep. at 24:7-11.

**Defendants' Response:** Defendants do not dispute this statement.

29.     Defendant Morfogen hired Plaintiff to work at the City Hall location. Morfogen Dep. at 24:12-16.

**Defendants' Response:** Defendants do not dispute this statement.

30.     Defendant Morfogen met with the general manager of the City Hall location on a weekly basis to discuss management of the restaurant. Morfogen Dep. at 15:20-23.

**Defendants' Response:** Defendants do not dispute this statement.

31.     When Plaintiff first started working at the City Hall location, he was paid by the hour. Morfogen Dep. at 26:5-9.

**Defendants' Response:** Defendants do not dispute this statement.

32.     In early 2019, Plaintiff began receiving a weekly salary at the City Hall location. Morfogen Dep. at 33:15-34:12.

**Defendants' Response:** Defendants do not dispute this statement.

33.     During the time when Plaintiff was paid a salary at the City Hall location, he did not have to clock in. Morfogen Dep. at 34:13-16.

**Defendants' Response:** Disputed. The cited testimony does not support that Plaintiff was not required to clock in. Plaintiff refused to clock in and clock out once he was paid on a salary basis even though it is policy for all employees to track their work hours. Wasserman Decl. ¶ 10. Plaintiff admitted that he was aware there was a policy that required all employees to clock in and clock out. Pl. Dep. 50:19-51:12, 66:8-13.

34.     Defendant DP Hospitality Group, LLC is not in possession of records of Plaintiff's hours worked during the time when he was paid a salary at the City Hall location. Morfogen Dep. at 34:17-36:11.

**Defendants' Response:** Defendants do not dispute this statement.

35.     Defendant David Thomas did not know Plaintiff's schedule when Plaintiff worked at the City Hall location. Thomas Dep. at 12:25-13:4.

**Defendants' Response:** Defendants do not dispute this statement. Plaintiff testified that Defendant Thomas did not set his work schedule. Pl. Dep. 39:18-21. Defendant Thomas also testified that as an owner, he was not involved in the day-to-day operations and did not deal with scheduling matters. Thomas Dep. 28:2-14.

36.     While being paid a salary at the City Hall location Plaintiff's duties included those of an expeditor. Morfogen Dep. at 42:12-43:13.

**Defendants' Response:** Defendants do not dispute this statement. Plaintiff's duties also included supervising kitchen employees, assigning work duties, making schedules, and hiring and firing kitchen employees. Wasserman Decl. ¶¶ 6-8, 12.

37.     At the City Hall location, Plaintiff's duties included coordinating with kitchen staff to make sure food was plated correctly and promptly. Morfogen Dep. at 42:23-25.

**Defendants' Response:** Disputed. The cited testimony supports that in addition to coordinating with kitchen staff to make sure food was plated correctly and promptly, Defendant Morfogen also testified that Plaintiff was a manager and had managerial duties. Morfogen Dep. 42:12 – 43:1; Wasserman Decl. ¶¶ 6-8, 12.

38.    At the City Hall location, Plaintiff's duties included ensuring that all food orders were complete and accurate before they were delivered to customers. Morfogen Dep. at 43:2-5.

**Defendants' Response:** Defendants do not dispute this statement.

39.    At the City Hall location, Plaintiff's duties included communicating with servers and other restaurant staff to ensure that food orders were delivered to the correct tables. Morfogen Dep. at 43:6-10.

**Defendants' Response:** Defendants do not dispute this statement.

40.    At the City Hall location, Plaintiff's duties included monitoring the progress of food orders and ensuring timely delivery of food to customers. Morfogen Dep. at 43:11-13.

**Defendants' Response:** Defendants do not dispute this statement.

41.    Morfogen does not recall whether Plaintiff set the weekly hours of other employees at the City Hall location. Morfogen Dep. at 38:13-20.

**Defendants' Response:** Defendants do not dispute this statement.

42.    Morfogen does not have access to the software used at the City Hall location to make employees' schedules. Morfogen Dep. at 38:21-23.

**Defendants' Response:** Defendants do not dispute this statement.

43.    Morfogen does not recall the names of any employees Plaintiff hired at the City Hall location. Morfogen Dep. at 39:3-4.

**Defendants' Response:** Disputed. Defendant Morfogen testified that although he did not recall their names, Plaintiff did hire runners and kitchen staff. Morfogen Dep. 39:3-7; Wasserman Decl. ¶¶ 7, 12.

44.    Morfogen is "not sure" whether the City Hall location has any records of Plaintiff playing a role in hiring employees. Morfogen Dep. at 40:5-8.

**Defendants' Response:** Disputed. Defendant Morfogen testified that "I'm not sure, but he did" when asked whether there are any documents to show Plaintiff hired or participated in hiring employees. Morfogen Dep. 40:5-8.

45.    Defendant Cummins does not know the names of any individuals that Plaintiff hired at the City Hall location. Cummins Dep. at 24:16-20.

**Defendants' Response:** Disputed. Defendant Cummins testified that he was "sure there was someone" but could not recall their names. Cummins Dep. 24: 19-20.

46.    Defendant Thomas does not have direct knowledge of Plaintiff hiring any employees at the City Hall location. Thomas Dep. at 16:20-17:8.

**Defendants' Response:** Disputed. The cited testimony shows that Defendant Thomas is aware that Plaintiff hired many employees based on his communications with Plaintiff and other restaurant employees. Further, as an owner, Thomas is not directly involved in hiring employees. Instead, ownership hires managers who are then responsible for hiring employees. Ownership does not participate in the direct hire of employees below managers. Thomas Dep. 28:2-14.

47.    Defendants have not produced any records indicating that Plaintiff played a role in the hiring of employees at the City Hall location. Buzzard Decl. ¶ 14.

**Defendants' Response:** Defendants do not dispute this statement. Defendants will provide testimony at trial from Bianca Wasserman and the General Manager at the City Hall location who have direct knowledge that Plaintiff hired kitchen employees at the City Hall location.

48.     Morfogen is "not sure" whether the City Hall location has any records of Plaintiff playing a role in discipling employees. Morfogen Dep. at 40:9-15.

**Defendants' Response:** Disputed. Defendant Morfogan testified that Plaintiff "fought with everybody there" and that there were "too many to mention" when asked to identify the names of people who Plaintiff disciplined. Morfogen Dep. 40:16 – 41:5. Defendants will provide testimony at trial from Bianca Wasserman and the General Manager of the City Hall location, who have direct knowledge of Plaintiff disciplining employees.

49.     Defendants have not produced any records indicating that Plaintiff played a role in the disciplining of employees at the City Hall location. Buzzard Decl. ¶ 15.

**Defendants' Response:** Defendants do not dispute this statement. Defendants will provide testimony at trial from Bianca Wasserman and the General Manager of the City Hall location, who have direct knowledge of Plaintiff disciplining employees.

50.     Morfogen does not recall the names of any employees Plaintiff disciplined at the City Hall location. Morfogen Dep. at 40:16-41:2.

**Defendants' Response:** Disputed. Defendant Morfogan testified that Plaintiff "fought with everybody there" and that there were "too many to mention" when asked to identify the names of people who Plaintiff disciplined. Morfogen Dep. 40:16 – 41:5.

51.     Morfogen is "not sure" whether the City Hall location has records of Plaintiff terminating any employee at the City Hall location. Morfogen Dep. at 41:6-10.

**Defendants' Response:** Defendants do not dispute this statement. Morfogen also testified that Plaintiff terminated employees "quite often." Morforgen Dep. 41:6-10.

52.    Morfogen does not recall the names of any employees Plaintiff terminated at the City Hall location. Morfogen Dep. at 41:11-14.

**Defendants' Response:** Defendants do not dispute this statement. Defendants will provide testimony at trial from Bianca Wasserman and the General Manager of the City Hall location, who have direct knowledge of Plaintiff terminating employees.

53.    Defendant Robert Cummins does not have direct knowledge of Plaintiff firing any employees at either Chophouse location. Cummins Dep. at 25:19-27:13.

**Defendants' Response:** Disputed. Because the owners are not involved in the day-to-day operations of the restaurant, they rely on the General Managers to report employee matters. The cited testimony supports that Defendant Cummins knows that Plaintiffs fired employees based on his communications with his General Managers. At least once, Cummins also learned that Plaintiff terminated an employee from the kitchen staff because Plaintiff did so publicly in front of everyone. Cummins Dep. 25:19-27:6.

54.    Defendant Thomas does not have direct knowledge of Plaintiff firing any employees at the City Hall location. Thomas Dep. at 20:22-22:6.

**Defendants' Response:** Disputed. Defendant Thomas is aware that Plaintiff fired employees through the Human Resources director based on Plaintiff's communications with the Human Resources director to terminate employees. Thomas Dep. 20:22 – 21:8; Wasserman Decl. ¶ 12.

55.    Defendants have not produced any records indicating that Plaintiff played a role in the termination of any employees at the City Hall location. Buzzard Decl. ¶ 16.

**Defendants' Response:** Defendants do not dispute this statement. Defendants will provide testimony at trial from Bianca Wasserman and the General Manager of the City Hall location, who have direct knowledge of Plaintiff terminating employees.

56.     Plaintiff stopped working at the City Hall location in or about April 2021. Morfogen Dep. at 46:7-12.

**Defendants' Response:** Defendants do not dispute this statement. Plaintiff was terminated from the City Hall location on or about April 5, 2021. Wasserman Decl. ¶ 5. Plaintiff admitted that he was fired by a manager and that Defendants Thomas, Cummins, and Morfogen were not the ones who fired him. Pl. Dep. 59:10-60:2.


**Plaintiff's Employment at the Times Square Location**

57.     Chad Leo testified as the designated corporate representative of Defendant Brooklyn Chophouse Times Square, LLC in this lawsuit. *See* Leo Dep. at 8:11-9:4.

**Defendants' Response:** Defendants do not dispute this statement.

58.     Plaintiff started working at the Times Square location in or about March 2022. Buzzard Decl., Ex. 7 (Rojas Dep.) at 59:2-9.

**Defendants' Response:** Disputed. Plaintiff started working at the Times Square location on or about April 3, 2022. Wasserman Decl. ¶ 4.

59.     Plaintiff was paid a weekly salary at the Times Square location. Leo Dep. at 28:18-29:7.

**Defendants' Response:** Defendants do not dispute this statement.

60.     At the Times Square location, Plaintiff's duties included coordinating with the kitchen staff to ensure all food orders are prepared and plated correctly and promptly. Leo Dep. at 21:15-21.

**Defendants' Response:** Disputed. Leo also testified that Plaintiff also "hired, disciplined, fired staff, especially food runners – food runners and dishwashers." Leo Dep. 22:19-21.

61.     At the Times Square location, Plaintiff's duties included ensuring that all food orders were complete and accurate before being delivered to customers. Leo Dep. at 21:22-25.

**Defendants' Response:** Disputed. Leo also testified that Plaintiff also "hired, disciplined, fired staff, especially food runners – food runners and dishwashers." Leo Dep. 22:19-21.

62.     At the Times Square location, Plaintiff's duties included communicating with servers and other restaurant staff to ensure food orders are delivered to the correct tables. Leo Dep. at 22:1-4.

**Defendants' Response:** Disputed. Leo also testified that Plaintiff also "hired, disciplined, fired staff, especially food runners – food runners and dishwashers." Leo Dep. 22:19-21.

63.     At the Times Square location, Plaintiff's duties included monitoring the progress of food orders and ensuring timely delivery to customers. Leo Dep. at 22:5-8.

**Defendants' Response:** Disputed. Leo also testified that Plaintiff also "hired, disciplined, fired staff, especially food runners – food runners and dishwashers." Leo Dep. 22:19-21.

64.     At the Times Square location, Plaintiff's duties included ensuring that all food items were properly labeled and stored correctly. Leo Dep. at 22:9-11.

**Defendants' Response:** Disputed. Leo also testified that Plaintiff also "hired, disciplined, fired staff, especially food runners – food runners and dishwashers." Leo Dep. 22:19-21.

65.     At the Times Square location, Plaintiff's duties included assisting with cleaning and organizing the kitchen and dining areas as needed. Leo Dep. at 22:12-15.

**Defendants' Response:** Disputed. Leo also testified that Plaintiff also "hired, disciplined, fired staff, especially food runners – food runners and dishwashers." Leo Dep. 22:19-21.

66.     The Brooklyn Chophouse, Times Square location is not in possession of any documents that would show how many hours Plaintiff worked each day. Leo Dep. at 27:15-28:7.

**Defendants' Response:** Defendants do not dispute this statement. Plaintiff refused to clock in and clock out once he became a salaried employee even though all employees are required to track their work hours. Leo Dep. 28:8-17; Wasserman Decl. ¶ 10. Plaintiff admitted that he was aware that there was a policy that required all employees to clock in and clock out, but he did not follow that policy. Pl. Dep. 50:19-51:12, 66:8-13.

67.     The Times Square location is not in possession of any evidence that would show that Plaintiff did not work on Sundays. Leo Dep. at 32:11-13.

**Defendants' Response:** Disputed. Defendants will offer testimony at trial from Chad Leo and other managers with knowledge that Plaintiff did not regularly work on Sundays.

68.     The brothers Eduardo Barranco and Jorge Barranco were hired to work at the Times Square location before Chad Leo began working at the restaurant. Leo Dep. at 34:1-13.

**Defendants' Response:** Defendants do not dispute this statement.

69.    Leo is not aware of any evidence that would show Plaintiff's involvement in the decision to hire Jorge Barranco. Leo Dep. at 34:14-17.

**Defendants' Response:** Disputed. Defendants will offer testimony at trial from Chad Leo and other managers with knowledge that Plaintiff hired Jorge Barranco.

70.    Defendants have not produced any documents showing that Plaintiff was involved in the decision to hire Jorge Barranco. Buzzard Decl. ¶¶ 17-18.

**Defendants' Response:** Disputed. Any paperwork relating to hiring Eduardo Barraco would not show who was involved in the hire process because that was not how the system was set up at the restaurant. Instead, new hires are hired by the department manager and then sent to the General Manager or Assistant General Manager to finalize paperwork. Leo Decl. ¶ 11; Wasserman Decl. ¶ 13.

71.    Chad Leo fired Jorge Barranco. Leo Dep. at 33:3-4.

**Defendants' Response:** Defendants do not dispute this statement. Leo personally observed Jorge Barranco being drunk on the job, which was grounds for immediate termination and removal from the premises. Plaintiff was notified of his termination. Leo Decl. ¶ 9.

72.    Leo is not aware of any evidence that would show Plaintiff's involvement in the decision to hire Eduardo Barranco. Leo Dep. at 34:18-21.

**Defendants' Response:** Disputed. Defendants will offer testimony at trial from Chad Leo and other managers with knowledge that Plaintiff hired Eduardo Barranco.

73.    Defendants have not produced any documents showing that Plaintiff was involved in the decision to hire Eduardo Barranco. Buzzard Decl. ¶¶ 17, 19.

**Defendants' Response:** Disputed. Any paperwork relating to hiring Eduardo Barraco would not show who was involved in the hire process because that was not how the system was set up at the restaurant. Instead, new hires are hired by the department manager and then sent to the General Manager or Assistant General Manager to finalize paperwork. Leo Decl. ¶ 11; Wasserman Decl. ¶ 13.

74.    Chad Leo fired Eduardo Barranco. Leo Dep. at 33:5-6.

**Defendants' Response:** Defendants do not dispute this statement. Leo fired Eduardo Barranco in his capacity as General Manager and only notified Plaintiff of the termination because Leo personally observed Eduardo Barranco stealing from the restaurant, which was grounds for immediate termination and removal from the restaurant premises. Leo Decl. ¶ 11.

75.    Plaintiff did not fill out incident report forms for other employees. Leo Dep. at 29:4-6.

**Defendants' Response:** Disputed. The cited testimony does not support that Plaintiff did not fill out incident report forms and instead relate to Plaintiff's weekly salary.

76.    Defendant David Thomas does not have direct knowledge that Plaintiff hired an employee named Javier. Thomas Dep. at 15:5-22.

**Defendants' Response:** Defendants do not dispute this statement. As an owner, Thomas is not involved in hiring employees, including Javier Veliz. Instead, ownership hires managers who are then responsible for hiring employees. Ownership does not participate in the direct hire of employees below managers. Thomas Dep. 28:2-14. Thomas is aware that Plaintiff hired Javier Veliz based on conversations with the Human Resources director who does have direct knowledge of hiring matters. Thomas Dep. at 15:8-22; Wasserman Decl. ¶ 12.

77.     Defendant David Thomas does not have direct knowledge that Plaintiff hired an employee named Jorge. Thomas Dep. at 15:23-16:19.

**Defendants' Response:** Disputed. The cited testimony shows that Thomas has knowledge that Plaintiff hired Jorge based on conversations with the Human Resources director and Plaintiff. Thomas Dep. 15:23 – 16:15. Further, as an owner, Thomas is not involved in hiring employees, including Javier Veliz. Instead, ownership hires managers who are then responsible for hiring employees. Ownership does not participate in the direct hire of employees below managers. Thomas Dep. 28:2-14.

78.     Defendant Robert Cummins does not have direct knowledge that Plaintiff hired employees named Javier, Jorge, and Eduardo. Cummins Dep. at 23:11-24:4, 24:21-25:13.

**Defendants' Response:** Disputed. The cited testimony supports that Cummins learned that Plaintiff hired employees from his General Manager. Cummins Dep. 23:20 – 25:13. Similarly, Cummins learned that Plaintiff terminated employees through his General Manager at both the City Hall and Times Square locations. *Id.* 26:4-27:6.

79.     Larry Purvis has been working as kitchen operations manager at the Times Square location since September 26, 2023. Buzzard Decl., Ex. 5 (Purvis Dep.) at 7:9-21.

**Defendants' Response:** Defendants do not dispute this statement.

80.     In the period between when he was hired as kitchen operations manager in September 2023 and January 2024, Purvis disciplined a food runner. Purvis Dep. at 9:8-25.

**Defendants' Response:** Disputed. The cited testimony does not support this. Instead, Purvis testified that he "did not have direct authority with disciplining of the runners" and that as a member of the management team, he "did have to essentially toe the line as far as making sure

that company policies were enforced" and thus, in that capacity, he disciplined a runner once. Purvis Dep., 9:8 – 25.

81.     Purvis never witnessed Plaintiff interview any employees. Purvis Dep. at 13:11-13, 14:16-21.

**Defendants' Response:** Defendants do not dispute this statement.

82.     Purvis had no direct knowledge of Plaintiff interviewing anyone for employment at Brooklyn Chophouse. Purvis Dep. at 15:7-10.

**Defendants' Response:** Disputed. The cited testimony does not support this. Purvis testified that based on his conversation with Ismael Morales, he learned that Plaintiff was the one who hired Ismael. Purvis Dep. 13:14-14:15.

83.     Purvis never witnessed Plaintiff hire any employees. Purvis Dep. at 13:19-22, 14:22-24.

**Defendants' Response:** Defendants do not dispute this statement.

84.      Purvis has no direct knowledge of Plaintiff offering employment to anyone at Brooklyn Chophouse. Purvis Dep. at 15:11-19.

**Defendants' Response:** Disputed. The cited testimony does not support this. Purvis testified that based on his conversation with Ismael Morales, he learned that Plaintiff was the one who hired Ismael. Purvis Dep. 13:14-14:15.

85.     Purvis has no direct knowledge of Plaintiff making schedules for any employee at Brooklyn Chophouse. Purvis Dep. at 15:15-19.

**Defendants' Response:** Defendants do not dispute this statement. However, Plaintiff did make schedules for runners and dishwashers with the General Manager. Leo Decl. ¶ 6.

86.     Purvis has no direct knowledge of Plaintiff terminating any employees from Brooklyn Chophouse. Purvis Dep. at 15:20-16:4, 22:8-11.

**Defendants' Response:** Defendants do not dispute this statement.

87.     One of Plaintiff's "primary responsibilities" was to work at the expeditor station at the Times Square location. Purvis Dep. at 19:5-8.

**Defendants' Response:** Disputed. In addition to his expeditor duties, Plaintiff was also manager and had managerial duties such as the authority to hire, fire, and discipline employees, make and change work schedules, and assign work duties. Leo Decl. ¶ ¶ 5-13.

88.     As a manager, Purvis used the computer in the manager's office at the Times Square location. Purvis Dep. at 19:25-20:12.

**Defendants' Response:** Defendants do not dispute this statement.

89.     Every person on the management team at the Times Square location has access to this computer. Purvis Dep. at 20:7-12.

**Defendants' Response:** Defendants do not dispute this statement.

90.     Purvis never witnessed Plaintiff using that computer or performing work at a desk in the manager's office. Purvis Dep. at 20:13-19.

**Defendants' Response:** Disputed. The cited testimony does not support this. Purvis testified that he was not sure that Plaintiff never used the computer or performed work at a deck in the manager's office because it was possible that Plaintiff did that work when Purvis was off or was not on site. Purvis Dep. 20:16-23. Plaintiff lacked the skills to use the computer directly and thus, had to rely on the General Manager to help him make weekly schedules. Leo Decl. ¶ 6.

91.     Purvis has no direct knowledge of Plaintiff performing any work in the manager's office at the Times Square location. Purvis Dep. at 20:24-21:4.

**Defendants' Response:** Defendants do not dispute this statement.

92.    Purvis is not aware of any occasion when Plaintiff disciplined any other employee at the Times Square location. Purvis Dep. at 22:3-7.

**Defendants' Response:** Defendants do not dispute this statement.

93.    Purvis was kitchen manager at the Times Square location while Plaintiff was employed there. Purvis Dep. at 23:22-25.

**Defendants' Response:** Defendants do not dispute this statement.

94.    Purvis remained kitchen manager at the Times Square location after Plaintiff ceased to be employed at that location. Purvis Dep. at 24:2-5.

**Defendants' Response:** Defendants do not dispute this statement.

95.    There was no new kitchen manager hired when Plaintiff ceased to be employed at the Times Square location. Purvis Dep. at 24:6-8.

**Defendants' Response:** Defendants do not dispute this statement. After his termination, Plaintiff's supervisory duties were divided amongst other supervisors with the bulk being transferred to Purvis. Leo Decl. ¶ 15.

96.    When Plaintiff left the Times Square location, another expeditor filled his expediting role. Purvis Dep. at 24:9-13.

**Defendants' Response:** Defendants do not dispute this statement. After his termination, Plaintiff's supervisory duties were divided amongst other supervisors with the bulk being transferred to Purvis. Leo Decl. ¶ 15.

97.    Javier Veliz was hired as a busboy at the Times Square location in early 2023. Buzzard Decl., Ex. 6 (Veliz Dep.) at 7:8-22.

**Defendants' Response:** Defendants do not dispute this statement.

98.    Veliz worked as a busboy for approximately six months and then became a runner. Veliz Dep. at 7:18-8:7.

**Defendants' Response:** Defendants do not dispute this statement.

99.    A manager named "Zara" hired Veliz to work as a busboy at the Times Square location. Veliz Dep. at 10:11-12, 11:24-12:6, 26:4-6.

**Defendants' Response:** Disputed. This misconstrues the cited testimony. Plaintiff referred Veliz to Zara to complete paperwork to confirm that he was hired. After he met with Zara and completed the necessary paperwork, she confirmed that he could start working. Leo Decl. ¶ 10.

100.    Plaintiff's only involvement in Veliz's becoming employed at the Times Square location was that he introduced Veliz to Zara. Veliz Dep. at 13:6-10; *see also* Rojas Dep. at 70:23-72:6.

**Defendants' Response:** Disputed. Leo Decl. ¶ 10.

101.    When Veliz became a runner, Plaintiff did not set his rate of pay. Veliz Dep. at 14:23-25.

**Defendants' Response:** Defendants do not dispute this statement.

102.    Plaintiff did not ask Veliz to become a runner. Veliz Dep. at 15:9-13.

**Defendants' Response:** Defendants do not dispute this statement.

103.    Chad Leo informed Veliz that he was becoming a runner. Veliz Dep. at 15:25-16:3.

**Defendants' Response:** Defendants do not dispute this statement.

104.    Chad Leo made Veliz's schedule when he became a runner. Veliz Dep. at 16:4-6.

**Defendants' Response:** Disputed. Leo worked with Plaintiff to make the work schedules for runners each week. Leo Decl. ¶ 6.

105.    Plaintiff did not hire Veliz as a busser. Veliz Dep. at 17:13-15, 18:5-6, 18:13-14.

**Defendants' Response:** Disputed. Leo Decl. ¶ 10.

106.    Plaintiff did not hire Veliz as a runner. Veliz Dep. at 17:16-18.

**Defendants' Response:** Defendants do not dispute this statement.

107.    Veliz never witnessed Plaintiff hiring any employees. Veliz Dep. at 15:15-22.

**Defendants' Response:** Disputed. The cited testimony does not demonstrate that Veliz never witnessed Plaintiff hiring any employees. The cited evidence relates to Veliz's role as a runner.

108.    Veliz never saw Plaintiff fire any employees. Veliz Dep. at 18:23-25.

**Defendants' Response:** Defendants do not dispute this statement.

109.    Veliz sometimes worked Sundays at the Times Square location. Veliz Dep. at 27:4-6.

**Defendants' Response:** Disputed. Veliz did not always work on Sundays and in fact, testified that he only worked one Sunday in an average month. Veliz Dep. 29:22 – 30:7.

110.    When Veliz worked Sundays at the Times Square location, Plaintiff was often present at the restaurant. Veliz Dep. at 27:7-10.

**Defendants' Response:** Defendants do not dispute this statement. However, Veliz did not always work on Sundays and in fact, testified that he only worked one Sunday in an average month. Veliz Dep. 29:22 – 30:7.

111.    On the Sundays that Veliz and Plaintiff worked together at the Times Square location, Plaintiff would remain at the restaurant until closing. Veliz Dep. at 28:19-25.

**Defendants' Response:** Defendants do not dispute this statement.

112.    Veliz worked on Sundays approximately one time per month. Veliz Dep. at 30:4-7.

**Defendants' Response:** Defendants do not dispute this statement.

113.    On the Fridays, Saturdays, and Sundays they worked together, Plaintiff and Veliz worked from the beginning of the dinner shift until closing. Veliz Dep. at 29:2-7.

**Defendants' Response:** Defendants do not dispute this statement. However, Plaintiff's regularly scheduled shifts were from Tuesday to Saturday. Plaintiff was not regularly scheduled to work on Sundays. Leo Decl. ¶ 8; Wasserman Decl. ¶ 11.

114.    Other than telling runners where to take each tray of food, Plaintiff did not do anything else to supervise runners. Veliz Dep. at 31:9-12.

**Defendants' Response:** Disputed. Veliz testified that other than telling runners where to take each tray of food, Plaintiff also told runners when they were not doing their jobs properly. Veliz Decl. 31:13-19.

115.    Veliz never asked Plaintiff for permission to take a day off. Veliz Dep. at 22:9-12.

**Defendants' Response:** Disputed. Veliz testified that he understood the restaurant's policy to require that any requests for days off be submitted to the immediate supervisor, which in his case was Plaintiff, with a copy sent to the General Manager. Veliz Decl. 20:6 – 21:3.

116.    Veliz did not witness any other employee asking Plaintiff for permission to take a day off. Veliz Dep. at 22:13-17.

**Defendants' Response:** Defendants do not dispute this statement.

117.    No one informed Veliz that if he needed to take a day off, the request should be made to Plaintiff. Veliz Dep. at 22:4-8.

**Defendants' Response:** Defendants do not dispute this statement.

118.    Plaintiff worked at the Times Square location until January 2024. Leo Dep. at 43:10-12.

**Defendants' Response:** Defendants do not dispute this statement. Plaintiff was terminated from the Times Square location for abandoning his shift in the middle of the New Years Eve dinner shift and was officially terminated the next business day. Leo Decl. ¶ 14. Plaintiff admitted that Larry Purvis was the one who terminated him. Pl. Dep. 87:17-88:4.

119.    Defendant Richard Cummins is present in the Times Square location a "few times a week." Cummins Dep. at 27:14-23.

**Defendants' Response:** Disputed. The cited testimony demonstrates that when he was present in the Times Square location, Defendant Cummins was in the front of the house "quite often", but did not go to the back of the house where Plaintiff worked as often. Specifically, Defendant Cummins testified that he was present in the front of the house "a few times a week," but only entered the kitchen or back of the house "three times a month." Cummins Dep. 27:14-28:3.

120.    Defendant Richard Cummins is present in the City Hall location "a few times a week." Cummins Dep. at 28:4-9.

**Defendants' Response:** Disputed. The cited testimony demonstrates that when Defendant Cummins was present in the City Hall location, he was "in the front of the house at that location more than the back of the house" where Plaintiff worked. Cummins Dep. 28:4-13. Moreover, this was around the time when the City Hall location first opened and thus, Defendants Cummins and Thomas were at the location more frequently. Thomas Dep. 27:17-25. Plaintiff testified that "it was very rare" that he would talk to Cummins, when he did, it was to order food, and on an average week, he would only talk to Cummins once or twice. Pl. Dep. 44:7-18.

121.    At the time Plaintiff was employed at the City Hall location, Defendant David Thomas was present in the restaurant nearly every day. Thomas Dep. at 27:17-24.

**Defendants' Response:** Disputed. The cited testimony does not demonstrate that Defendant Thomas was present in the restaurant nearly every day during Plaintiff's entire employment at the City Hall location. Instead, Defendant Thomas testified that he was at the restaurant often when it first opened in and around October 18, 2018. Thomas Dep. 27:17-25. Plaintiff testified that he only talked to Defendant Thomas once a week about work issues. Pl. Dep. 40:25-41:14.

122.     While the general manager of the City Hall location has authority set the salary for kitchen managers, that manager required approval from Morfogen, Cummins, or Thomas if the proposed salary was "out of line." Morfogen Dep. at 16:23-17:6.

**Defendants' Response:** Defendants do not dispute this statement.

123.     The general manager at the City Hall location had to check with Morfogen, Thomas, or Cummins before retaining a payroll company. Morfogen Dep. at 17:12-25.

**Defendants' Response:** Disputed. The cited testimony does not demonstrate that the general manager had to check with Morfogen, Thomas, or Cummins before retaining a payroll company. Defendant Morfogen testified that it was not part of his job duties to retain a payroll company and that he thought a general manager would have had to confer with Cummins and him, but not Thomas.

124.     Defendants Thomas, Cummins, and Morfogen collectively decided to hire Plaintiff to work at the Times Square location. Thomas Dep. at 31:16-19, 31:25-33:6.

**Defendants' Response:** Defendants do not dispute this statement.

125.     Defendants Thomas, Cummins, and Morfogen collectively decided to terminate Plaintiff from the Times Square location. Thomas Dep. at 46:21-47:9.

**<u>Defendants' Response:</u>** Defendants do not dispute this statement. Plaintiff was terminated for abandoning his job in the middle of the New Years Eve dinner shift. Based on the severity of his behavior, this was grounds for immediate termination. Leo Decl. ¶ 14.

126.    Defendants Thomas, Cummins, and Morfogen set the general range of what restaurant employees could be paid and allow the restaurant managers to decide where within that range each employee will be paid. Thomas Dep. at 30:10-31:3.

**<u>Defendants' Response:</u>** Disputed. The cited testimony refers only to pay rates for hourly employees and not to salaried employees. Plaintiff admitted that Defendant Cummins, Thomas, and Morfogen did set any time or pay-keeping policies. Pl. Dep. 39:25-40:3, 44:4-6, 46:14-16.

127.    If restaurant managers want to pay employees above the rate set by Thomas, Cummins, and Morfogen, there must first be a "conversation" with the owners. Thomas Dep. at 30:5-16.

128.    **Defendants' Response:** Disputed. The cited testimony refers only to pay rates for hourly employees. Specifically, Mr. Thomas testified that management, and not Thomas, Cummins, or Morfogen, is in charge of hiring hourly employees and can offer them hourly rates that are within a pre-determined range. In the event management wants to deviate from that range for hourly employees, management would then have to confer with the owners. Thomas Dep. at 30:5-31:3.

Dated:  New York, New York
July 21, 2025

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By:    /s/ Dong Phuong V. Nguyen
Brian Pete, Esq.
Dong Phuong V. Nguyen, Esq.
*Attorneys for Defendants*
7 World Trade Center
250 Greenwich Street, 11th Floor
New York, New York  10007
212.232.1300
Brian.Pete@lewisbrisbois.com
Phuong. Nguyen@lewisbrisbois.com