UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ERICK ROJAS,

                              Plaintiff,        Case No. 24-CV-0772 (KPF)

   -against-

**DECLARATION OF BIANCA WASSERMAN**

DP HOSPITALITY GROUP, LLC, D/B/A
BROOKLYN CHOPHOUSE CITY HALL,
BROOKLYN CHOPHOUSE TIMES SQUARE, LLC,
DAVID THOMAS, STRATIS MORFOGEN, AND
ROBERT (DON POOH) CUMMINS,

                              Defendants.
----------------------------------------------------------------X

       Pursuant to 28 U.S.C. § 1746, I, BIANCA WASSERMAN, declare as follows subject to the penalties of perjury:

       1.    I submit this declaration based on my personal knowledge in opposition of the motion for partial summary judgment being filed by Plaintiff Erick Rojas ("Plaintiff") against Defendants DP Hospitality Group LLC ("City Hall location"), Brooklyn Chophouse Times Square, LLC ("Times Square location"), David Thomas, Stratis Morgoen, and Robert Cummins (collectively "Defendants").

       2.    DP Hospitality Group LLC and Brooklyn Chophouse Times Square LLC are two separate companies that each operate a restaurant in New York City.

       3.    Brooklyn Chophouse Times Square LLC is located at 253 West 47th Street, New York, NY 10036 and first opened for business in 2022. The restaurant is open for business from 4 pm to 11 pm each day, seven days a week. DP Hospitality Group LLC d/b/a Brooklyn Chophouse City Hall is located at 150 Nassau Street, New York, NY 10038.

4. I am currently the Human Resources Manager of the City Hall location and have worked in that capacity since 2018. In my capacity as Human Resources manager, I am responsible for maintaining employees' personnel files and assisting managers in their supervision of employees and the operation of the restaurant. I am familiar with Plaintiff as I was the Human Resources Manager when Plaintiff first started working at the City Hall location and throughout his employment there until his termination for cause. I was also Human Resources Manager when he was rehired to work at the Times Square location on or about April 3, 2022. I work at the City Hall location and thus, frequently interacted with Plaintiff when he was there. I am aware that during Plaintiff's time at the City Hall location, he was accused of sexually harassing another employee during a work event and the company had to pay out of its pockets to settle those claims.

5. Plaintiff was hired to work at the City Hall location on or about October 1, 2018 as an hourly kitchen employee until January 13, 2019 when he was promoted to kitchen manager. He continued to work as a kitchen manager until April 5, 2021 when he was terminated for insubordination after engaging in a verbal argument and threatening another employee. As kitchen manager, he was paid a salary of $1,200, which was later increased to $1,300 a week.

6. As a kitchen manager, Plaintiff's work duties included managing the runners and dishwashers and expediting orders. Plaintiff worked closely with the head chef to ensure that food was promptly delivered to customers in an expedient manner. This required him to closely supervise the runners to ensure that food was delivered to customers' tables, tables were cleared by the runners, and that the dishwashers were keeping up to ensure a constant supply of clean dishes for the restaurant. As kitchen manager, Plaintiff was also responsible for supervising employees to ensure that the kitchen was clean, the food was labeled and dated, and that employees were adhering to food safety standards.

7. In addition to his duties relating to food safety, as kitchen manager, Plaintiff was also responsible for ensuring that kitchen employees clocked in and out for their shifts, made and reviewed weekly work schedules, assigned work duties to kitchen employees, and disciplined them as necessary.

8. In the event a runner or dishwasher had to take a day off, come in late, or otherwise deviate from their normal work schedule, they were expected to request permission from Plaintiff. Plaintiff would then inform the General Manager of the schedule change during weekly meetings.

9. Prior to March 2020, the City Hall location was open from noon to 11:00 p.m. on weekdays and until midnight on Fridays and Saturdays for lunch and dinner service. However, during COVID, due to decreased demand, the restaurant stopped offering lunch service and adjusted its hours to 4:00 pm. to 11:00 p.m. weekdays and 4:00 p.m. to midnight on weekends.

10. During his time as an hourly employee from October 1, 2018 to January 12, 2019, Plaintiff was required to and did clock in and clock out to track his work hours and thus, was paid overtime wages if he worked more than forty hours each week. Once he was promoted to kitchen manager and paid a weekly salary, Plaintiff refused to continue to clock in and out to track his work hours although it is restaurant policy that all employees, including managers, utilize the time clock to track their work hours.

11. In his capacity as kitchen manager, Plaintiff reported to work approximately thirty minutes before the start of the meal service and routinely shortly after meal service ended for the night. Thus, Plaintiff usually arrived at the restaurant at approximately 11:30 a.m. when the restaurant still offered lunch service and at 3:30 p.m. when the restaurant switched to dinner service only. Plaintiff routinely left between 10:50 to 11:20 p.m. on the weekdays and midnight and

12:30on the weekends. When Plaintiff worked both the lunch and dinner shifts, he would also often take a break between the two services of at least thirty minutes to one hour.

12. Plaintiff was involved in hiring and terminating kitchen employees during his time at the City Hall location. Specifically, during his time as kitchen manager, Plaintiff hired multiple dishwashers and runners without consulting anyone and was known to terminate or threaten to terminate kitchen employees whom he felt were insubordinate or too slow with their work duties. I recall that he hired and supervised Feliz Maldonado along with other kitchen employees. On several occasions, Plaintiff engaged in loud verbal confrontations with these kitchen workers for their alleged performance issues and had to be counseled for his behavior. Notwithstanding Plaintiff's behavior, based on his directions, the workers were terminated and taken off the work schedules as requested by Plaintiff. On multiple occasions, Plaintiff told me that he terminated employees for cause and that I should finalize any paperwork for their termination.

13. At the City Hall location, it is understood that the manager of that department will hire the people needed to work in that department and direct them to the general manager or assistant general manager to fill out and finalize the paperwork. In this process, however, the decision to hire remains with the department manager and the general manager or assistant general manager is only responsible for paperwork once the decision is made to hire the employee. In his motion, Plaintiff argues that there are no documents to show that Plaintiff was involved in hiring any employees, which is correct because that is not how the hiring process works at the City Hall location as explained herein.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: July _21____, 2025

_____
BIANCA WASSERMAN