```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ERICK ROJAS,
                          Plaintiff,        Case No. 24-CV-0772 (KPF)

        -against-
                                             DECLARATION OF
DP HOSPITALITY GROUP, LLC, D/B/A             CHAD LEO
BROOKLYN CHOPHOUSE CITY HALL,
BROOKLYN CHOPHOUSE TIMES SQUARE, LLC,
DAVID THOMAS, STRATIS MORFOGEN, AND
ROBERT (DON POOH) CUMMINS,
                          Defendants.
---------------------------------------------------------------X
```

Pursuant to 28 U.S.C. § 1746, I, CHAD LEO, declare as follows subject to the penalties of perjury:

1. I submit this declaration based on my personal knowledge in opposition of the motion for partial summary judgment being filed by Plaintiff Erick Rojas ("Plaintiff") against Defendants DP Hospitality Group LLC ("City Hall location"), Brooklyn Chophouse Times Square, LLC ("Times Square location"), David Thomas, Stratis Morgoen, and Robert Cummins (collectively "Defendants").

2. DP Hospitality Group LLC and Brooklyn Chophouse Times Square LLC are two separate companies that each operate a restaurant in New York City.

3. Brooklyn Chophouse Times Square LLC is located at 253 West 47th Street, New York, NY 10036 and first opened for business in 2022. The restaurant is open for business from 4 pm to 11 pm each day, seven days a week.

4. I am currently the General Manager of the Times Square location and have worked in that capacity since 2023. In my capacity as General Manager, I am responsible for overseeing

the restaurant's operations and employees. The employees are divided into two general groups, the front of the house and the back of the house employees. The front of the house employees generally include any public-facing roles, including servers, hosts, and bartenders. The back of the house employees generally includes kitchen employees such as runners, dishwashers, and cooks. I generally supervise the front of the house employees while the back of the house employees are supervised and managed by the kitchen manager and the head chef.

5. When I was hired as General Manager, Plaintiff was already working at the Times Square location as the kitchen manager/expediter. In his capacity as a kitchen manager and expediter, his work duties included managing the runners and dishwashers and expediting orders. Plaintiff worked closely with the head chef to ensure that food was promptly delivered to customers in an expedient manner. This required him to closely supervise the runners to ensure that food was delivered to customers' tables, tables were cleared by the runners, and that the dishwashers were keeping up to ensure a constant supply of clean dishes for the restaurant. As kitchen manager, Plaintiff was also responsible for supervising employees to ensure that the kitchen was clean, the foods were labeled and dated, and that employees were adhering to food safety standards.

6. In addition to his duties relating to food safety, as kitchen manager, Plaintiff was also responsible for supervising at least four kitchen employees and ensuring that all kitchen employees clocked in and out for their shifts, made and reviewed weekly work schedules, assigned work duties to runners and dishwashers, and disciplined them as necessary. Specifically, because the Times Square location used 7 shifts, a computer software, to make weekly work schedules, but Plaintiff was unable to use a computer or navigate that software on his own, he would meet with

me each week in my office so that I could help him create the work schedules for the kitchen employees for the upcoming week.

7.      In the event a runner or dishwasher had to take a day off, come in late, or otherwise deviate from their normal work schedule, they were expected to request permission from Plaintiff. Plaintiff would then inform me of the schedule change during our weekly meetings. For example, if a runner requested a day off, he would tell me to schedule another runner in his place. I relied on Plaintiff's directions and input to generate the work schedules each week.

8.      Because the restaurant opens for business at 4:00 p.m. and closes at 11:00 p.m. everyday, I generally report to work at 2:30 p.m. and leave the restaurant once the last table of customers leave for the night, which could be from 11:00 pm to 12:30 a.m. Plaintiff always arrived after me and usually reported to the restaurant between 4:00 p.m. and 4:30 p.m. and usually left once the food for the last table was delivered to the customer, which was usually by 11:00 or 11:15 p.m. on weekdays and midnight on Fridays and Saturdays. Plaintiff worked five days a week, Tuesday through Saturday. I know when Plaintiff usually arrived at the restaurant and left for the day because he would always say hi and bye to me every day.

9.      In his capacity as kitchen manager, I have personal knowledge that Plaintiff hired Jorge Barranco and Eduardo Barranco. While they were already working at the Times Square location when I started working there, I know Plaintiff hired Jorge and Eduardo Barranco because Plaintiff told me he did. In his motion, Plaintiff points to their termination to argue that he did not supervise them. This is incorrect. Plaintiff hired them and supervised their day-to-day duties. I terminated both Jorge and Eduardo Barranco separately for cause, one for stealing alcohol and one for being drunk in the restaurant. Plaintiff was only notified of their termination and was not asked to terminate the two employees himself because stealing from the restaurant and being drunk in

the restaurant are serious infractions that required immediate termination and I personally observed Jorge and Eduardo Barranco committing those acts on camera, thus I had to personally terminate them. The seriousness of the actions required that they be terminated and immediately escorted off of the premises. Therefore, while Plaintiff did not terminate Jorge and Eduardo Barranco, he was still their manager because he hired them and supervised them while they were still employed.

10. I am also aware that Plaintiff was involved in hiring Javier Veliz. I know this based on my conversations with Mr. Veliz who informed me that after he contacted Plaintiff asking about available jobs, Plaintiff told him that he could work at the Times Square location as a busser, and referred him to Zara, the General Manager at that time, so she can finalize his paperwork after Plaintiff already hired him. Plaintiff also supervised Mr. Veliz when he started working as a runner.

11. At the Times Square location, it is understood that the manager of that department will hire the people needed to work in that department and direct them to the general manager or assistant general manager to fill out and finalize the paperwork. In this process however, the decision to hire remains with the department manager and the general manager or assistant general manager is only responsible for paperwork once the decision is made to hire the employee. In his motion, Plaintiff argues that there are no documents to show that Plaintiff was involved in hiring any employees, which is correct because that is not how the hiring process works at the Times Square location as explained herein.

12. Over the course of Plaintiff's employment, he hired numerous dishwashers and runners. I know this because on multiple occasions, Plaintiff brought new employees to my office and told me to put them on the work schedule because he needed additional help in the kitchen. I would then add them to the work schedule and finalize their paperwork. At no point during any of these instances did Plaintiff have to request permission from me or anyone else before deciding to

hire these kitchen employees. I recall that he hired Graviel Orlando Yatz Ac, Jose Q. Xol Choc, and Wilson Enrique Valencia Nunez as dishwashers.

13.     Over the course of Plaintiff's employment, he also disciplined and fired numerous kitchen employees. I know this because on multiple occasions, Plaintiff has walked into my office and told me to take certain employees off of the work schedule because he terminated them for insubordination. I then removed those employees from the work schedule based on my conversation with Plaintiff.

14.     Plaintiff was terminated for job abandonment after he walked off of his shift during the New Years Eve dinner shift on December 31, 2023. Due to the seriousness of his actions, he was immediately terminated without any input from Robert Cummins, David Thomas, or Stratis Morfogen.

15.     After his termination, Larry Purvis, the co-kitchen manager took over as the sole kitchen manager and also assumed Plaintiff's supervisory duties over the runners and dishwashers. Mr. Purvis continues to work this role to present.

16.     Although Robert Cummins and David Thomas are owners of the restaurant, they are not involved in the day-to-day operations. In my role of General Manager, I only interact with Mr. Thomas and communicate with him about restaurant matters. While I would see him when he visits the restaurant to eat there, this only occurs once or twice a month and we do not frequently discuss any restaurant issues other than general summaries like whether it has been busy or not. I interact with Mr. Cummins and communicate with him about restaurant matters

more often, but even then, it is just a few times a week and does not involve the daily restaurant operations. Generally, managers, including kitchen managers, are expected to manage their own departments independently with limited input from the owners. If there are any issues, it is expected that the department managers confer with the General Manager, and not Messrs. Cummins or Thomas, to resolve the issues.

17. Similarly, Stratis Morfogan was only involved in the early days of the Times Square location when it first opened. After I was hired, Stratis was rarely involved in the operations of the restaurant and would only come to eat at the restaurant a few times a month.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: July 21st, 2025

_____
CHAD LEO