UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ERICK ROJAS,

                Plaintiff,

                -v.-

DP HOSPITALITY GROUP, LLC, *doing business as* BROOKLYN CHOPHOUSE CITY HALL; BROOKLYN CHOPHOUSE TIMES SQUARE, LLC; DAVID THOMAS; STRATIS MORFOGEN; and ROBERT (DON POOH) CUMMINS,

                Defendants.

24 Civ. 772 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

     Plaintiff Erick Rojas brought this action for violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219, and the New York Labor Law (the "NYLL"), N.Y. Lab. Law §§ 190-199-a, 650-665, against his former employers — DP Hospitality Group, LLC and Brooklyn Chophouse Times Square, LLC — as well as three individuals who are alleged to be his joint employers, David Thomas, Stratis Morfogen, and Robert (Don Pooh) Cummins (collectively, "Defendants"). Before the Court now is Plaintiff's motion for partial summary judgment under Federal Rule of Civil Procedure 56. For the reasons set forth below, the Court grants the motion in part and denies it in part.

## BACKGROUND[1]

### A. Factual Background

Plaintiff Erick Rojas worked as an expeditor at two different locations of the restaurant Brooklyn Chophouse. (Pl. 56.1 ¶¶ 28, 36, 58, 87). In his first stint with the restaurant, from October 2018 to April 2021, Mr. Rojas worked at the City Hall location, which is owned and operated by Defendant DP Hospitality Group, LLC. (*Id.* ¶¶ 1, 28, 56). He was hired by Defendant Stratis Morfogen, a managing member of DP Hospitality Group, LLC. (*Id.* ¶¶ 3, 29). As an expeditor, Mr. Rojas was responsible for coordinating between kitchen and front-of-house staff, ensuring that food orders were completed on time, plated correctly, and delivered to the right tables. (*Id.* ¶¶ 36-40). When he first

---

[1] This Opinion draws its facts primarily from Plaintiff's Complaint ("Compl." (Dkt. #1)), the operative pleading in this matter, and from the parties' submissions in connection with Plaintiff's motion for partial summary judgment. Those submissions include: Plaintiff's Rule 56.1 Statement of Material Facts ("Pl. 56.1" (Dkt. #38)); the Declaration of Lucas C. Buzzard ("Buzzard Decl." (Dkt. #39)) in support of Plaintiff's motion, as well as the exhibits attached thereto ("Buzzard Decl., Ex. [ ]"); the Reply Declaration of Lucas C. Buzzard ("Buzzard Reply Decl." (Dkt. #55)) in support of Plaintiff's motion, as well as the exhibit attached thereto ("Buzzard Reply Decl., Ex. A"); Defendants' Response to Plaintiff's Rule 56.1 Statement of Material Facts ("Def. 56.1 Resp." (Dkt. #44)); and the Declarations of Dong Phuong V. Nguyen ("Nguyen Decl." (Dkt. #45)), Bianca Wasserman ("Wasserman Decl." (Dkt. #46)), and Chad Leo ("Leo Decl." (Dkt. #47)) in opposition to Plaintiff's motion, as well as the exhibits attached thereto ("[Name] Decl., Ex. [ ]").

Citations to the parties' Rule 56.1 Statements incorporate by reference the documents and deposition testimony cited therein. *See* Local Rule 56.1(d). In general, where facts stated in a party's Rule 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court considers such facts to be true. *See* Local Rule 56.1(c), (d); *Biberaj* v. *Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." (internal quotation marks omitted) (quoting *T.Y.* v. *N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009))).

For ease of reference, the Court refers to Plaintiff's memorandum of law in support of his motion for partial summary judgment as "Pl. Br." (Dkt. #37), to Defendants' memorandum of law in opposition to Plaintiff's motion for partial summary judgment as "Def. Opp." (Dkt. #43), to Plaintiff's reply memorandum of law as "Pl. Reply" (Dkt. #54), and to Defendants' sur-reply memorandum of law as "Def. Sur-Reply" (Dkt. #56).

started at the City Hall location, Mr. Rojas was paid by the hour. (*Id.* ¶ 31). In early 2019, however, his compensation model switched to a weekly salary, with no additional payment for overtime. (*Id.* ¶ 32).

In his second stint, from March 2022 to January 2024, Mr. Rojas worked at the Times Square location, which is owned and operated by Defendant Brooklyn Chophouse Times Square, LLC. (Pl. 56.1 ¶¶ 11, 58, 118). Mr. Morfogen, together with Defendants David Thomas and Robert (Don Pooh) Cummins, collectively hired Mr. Rojas at the Times Square location, and they also made the collective decision to terminate him a few years later. (*Id.* ¶¶ 124-125). Mr. Thomas and Mr. Cummins own Defendant DP Hospitality Group, LLC and hold ownership interests in Defendant Brooklyn Chophouse Times Square, LLC. (*Id.* ¶¶ 2, 12-13). As with his employment at the City Hall location, Mr. Rojas was primarily responsible for working at the expeditor station at the Times Square location. (*Id.* ¶ 87). Similarly, he was paid a weekly salary, with no additional compensation for overtime. (*Id.* ¶ 59).

Mr. Rojas alleged that he worked in excess of 40 hours a week over the course of his employment at each location, but that he never received overtime compensation to which he was entitled, in violation of the FLSA and the NYLL. (Compl. ¶¶ 15-16, 21-28). In addition, Mr. Rojas claimed that he did not understand his entitlement to overtime compensation because he never received a wage notice from Defendants at any point during his employment. (*Id.* ¶¶ 19, 29-31). Finally, Mr. Rojas added that he was never paid a "spread of

3

hours" premium for workdays that exceeded 10 hours, as required by the NYLL. (*Id.* ¶¶ 18, 32-35).

**B.     Procedural Background**

On February 2, 2024, Mr. Rojas filed a Complaint in this Court against all five Defendants. (Dkt. #1). Defendants filed their Answer on March 27, 2024. (Dkt. #10). After a failed attempt at mediation, the parties agreed to proceed directly to discovery, which was extended a few times at the parties' request but ultimately completed in March 2025. (Dkt. #18-20, 23, 30). At the close of discovery, Mr. Rojas filed a request for a pre-motion conference in anticipation of moving for partial summary judgment on several issues, including (i) whether Mr. Rojas was exempt from the overtime requirements of the FLSA and the NYLL and (ii) whether the individual Defendants — Mr. Thomas, Mr. Morfogen, and Mr. Cummins — were liable as joint employers. (Dkt. #31). The Court granted the request and held a pre-motion conference on April 23, 2025, at which conference it set the briefing schedule for Mr. Rojas's anticipated motion. (Dkt. #33, 35; April 23, 2025 Minute Entry).

On May 30, 2025, Mr. Rojas filed his motion for partial summary judgment along with supporting papers. (Dkt. #36-39). After receiving a brief extension from the Court, Defendants filed their opposition to Mr. Rojas's motion as well as supporting papers on July 21, 2025. (Dkt. #41, 43-47). Among those papers is a declaration by Bianca Wasserman, the human resources manager of the City Hall location. (Wasserman Decl. ¶ 4; *see* Dkt. #46).

4

Because Mr. Rojas claimed that Ms. Wasserman had not been identified and disclosed to Plaintiff's counsel until the eve of the close of discovery, he requested that the Court strike her declaration and impose sanctions on Defendants. (Dkt. #48; *see* Dkt. #49). The Court held a telephonic conference to resolve the dispute. (Dkt. #51). At the conference, the Court allowed the parties to reopen discovery on a limited basis so that Plaintiff's counsel could depose Ms. Wasserman, extended the deadline for Mr. Rojas to file his reply, and gave Defendants the opportunity to file a three-page sur-reply regarding Ms. Wasserman. (August 7, 2025 Minute Entry). On October 15, 2025, Mr. Rojas filed his reply, along with a reply declaration by Plaintiff's counsel containing the transcript of the deposition of Ms. Wasserman. (Dkt. #54-55). Defendants filed their sur-reply on October 31, 2025. (Dkt. #56).

## DISCUSSION

**A.     Applicable Law**

Under Rule 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Anderson*, 477 U.S. at 248). Furthermore, a particular fact is "material" if it

"might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

The movant "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,'" *ICC Chem. Corp.* v. *Nordic Tankers Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Celotex*, 477 U.S. at 323). The movant can meet that burden in two ways: (i) by offering affirmative evidence that "demonstrate[s] the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, or, if the burden of proof would fall on the nonmovant at trial, (ii) by simply "point[ing] to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," *Jaramillo* v. *Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). Should the movant discharge that burden, the nonmovant must then "come forward with admissible evidence sufficient to raise a genuine issue of fact for trial to avoid summary judgment." *Id.* This requires the nonmovant to "go beyond the pleadings, and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Flowers* v. *Conn. Light & Power Co.*, 774 F. App'x 33, 35 (2d Cir. May 29, 2019) (summary order) (internal quotation marks omitted) (quoting *Davis* v. *New York*, 316 F.3d 93, 100 (2d Cir. 2002)); *accord Parks Real Est. Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the

movant." *Dall. Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).  Nevertheless, "[t]hough [the court] must accept as true the allegations of the party defending against the summary judgment motion, … conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."  *Kulak* v. *City of New York*, 88 F.3d 63, 71 (2d Cir. 1996); *accord Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

### B. The Court Grants in Part Plaintiff's Motion for Partial Summary Judgment

#### 1. A Genuine Dispute over the "Bona Fide Executive" Employee Exemption Precludes Summary Judgment on That Issue

Under the FLSA and the NYLL, "an employee who works more than forty hours per week must receive compensation for 'employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.'"  *Ramos* v. *Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558-59 (2d Cir. 2012) (quoting 29 U.S.C. § 207(a)(1)); *see id.* at 556 n.1 (explaining that "[l]ike the FLSA," the NYLL requires overtime pay and applies the same exemptions).  Nevertheless, both statutes also enumerate certain exemptions, including one for "bona fide executive" employees.  *Id.* at 556 (explaining that "the FLSA's overtime compensation protections 'shall not apply' to 'any employee employed in a bona fide executive, administrative, or professional capacity,' as those terms are defined by Department of Labor [("DOL")] regulations" (quoting 29 U.S.C. § 213(a)(1))); *see also Giallanzo* v. *City of New York*, 630 F. Supp. 3d 439, 451-52 (S.D.N.Y. 2022).

7

The relevant DOL regulation defines a "bona fide executive" employee as any employee

> (1) Compensated on a salary basis at not less than the level set forth in § 541.600;[2] (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) Who customarily and regularly directs the work of two or more other employees; and (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a); *see also Ramos*, 687 F.3d at 559-60; *Giallanzo*, 630 F. Supp. 3d at 452. Given that such exemptions constitute affirmative defenses, the employer "bears the burden of proving that its employees fall within an exempted category." *Martin* v. *Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991). Moreover, the Second Circuit has instructed that the exemptions should be "narrowly construed." *Id.*

In this case, the parties dispute whether Mr. Rojas qualified as a "bona fide executive" employee during his employment at both locations of the Brooklyn Chophouse restaurant and was thus exempt from the statutory requirements of overtime compensation. (Pl. Br. 5-14; Def. Opp. 5-10). Specifically, Mr. Rojas contends that Defendants' evidence is insufficient to create a genuine issue of material fact on the fourth prong of the exemption — namely, that he had authority to hire or fire other employees, or that his

---

[2] Section 541.600 currently sets the standard salary level as $844 per week beginning on July 1, 2024, and $1,128 per week beginning on January 1, 2025. 29 C.F.R. § 541.600(a)(1)-(2).

8

suggestions regarding such matters were given particular weight.  (Pl. Br. 7-14).[3]

According to Mr. Rojas, "[n]ot a single witness could provide non-conclusory, non-hearsay evidence" demonstrating his authority over employment matters during discovery, "either in the form of non-hearsay testimony or documentary records."  (Pl. Br. 8, 12).  In addition, he argues that any "occasional suggestion [that he may have made] with regard to the change in status of a co-worker is not sufficient to show that [his] recommendations ... were given a particular weight."  *Paganas* v. *Total Maint. Sol., LLC*, 726 F. App'x 851, 854-55 (2d Cir. Mar. 12, 2018) (summary order) (internal quotation marks omitted) (quoting *Karropoulos* v. *Soup du Jour, Ltd.*, 128 F. Supp. 3d 518, 535 (E.D.N.Y. 2015)).  (Pl. Br. 7, 13-14).

In response, Defendants rely on the declarations of two witnesses, respectively, to establish Mr. Rojas's authority at each location of the restaurant.  (Def. Opp. 7-10).  *First*, regarding the City Hall location, Defendants refer to the declaration of Bianca Wasserman, the human resources manager at that location since 2018.  (Wasserman Decl. ¶ 4).

---

[3]   Mr. Rojas does not concede that Defendants have met the remaining three prongs of the exemption, but he focuses on the fourth prong because Defendants bear the burden of establishing all four prongs to assert the exemption as an affirmative defense.  (*See* Pl. Reply 2-3).  On the one hand, if there is insufficient evidence of the fourth prong, then Defendants have not carried their burden and the Court may grant summary judgment in favor of Mr. Rojas.  On the other hand, if there is a genuine dispute over the fourth prong, then the Court cannot grant summary judgment, as Mr. Rojas has not discussed the remaining prongs in his briefs and Defendants have proffered at least some evidence from which the Court can draw reasonable inferences about those prongs. (*See* Def. Opp. 7).  Therefore, the Court focuses its analysis on the fourth prong, which is dispositive at this stage of the litigation.

According to Ms. Wasserman, Mr. Rojas was initially hired as an hourly kitchen employee in October 2018 but was soon promoted to kitchen manager in January 2019, a role for which he was paid a weekly salary of at least $1,200. (*Id.* ¶ 5). Ms. Wasserman emphasized that as kitchen manager, Mr. Rojas "hired multiple dishwashers and runners without consulting anyone and was known to terminate or threaten to terminate kitchen employees whom he felt were insubordinate or too slow with their work duties." (*Id.* ¶ 12). Specifically, Ms. Wasserman recalled that Mr. Rojas hired Feliz Maldonado along with other kitchen employees, and that he asked her to finalize the paperwork for several employees whom he terminated for cause. (*Id.*). At her deposition, Ms. Wasserman also confirmed that (i) Mr. Rojas hired "[a]t least a dozen" employees during his time at the City Hall location and (ii) Mr. Rojas told her personally that Mr. Maldonado was hired to work at the City Hall location. (Buzzard Reply Decl., Ex. A at 23, 36).

Mr. Rojas attempts to challenge Ms. Wasserman's testimony as lacking in specific knowledge, but the Court finds Mr. Rojas's argument to be unpersuasive. Mr. Rojas first claims that Ms. Wasserman stated during her deposition that Mr. Maldonado was "[p]ossibly" hired by Mr. Morfogen instead of Mr. Rojas, thus contradicting her declaration. (Buzzard Reply Decl., Ex. A at 27; Pl. Reply 4). But Ms. Wasserman's answer was in response to Plaintiff's counsel's hypothetical question about Mr. Morfogen's hiring authority, which may be greater than that of Mr. Rojas but which does not necessarily preclude Mr. Rojas from exercising his own authority or at least persuading the

restaurant to hire employees such as Mr. Maldonado.  *See Tamayo* v. *DHR Rest. Co., LLC*, No. 14 Civ. 9633 (GBD), 2017 WL 532460, at *8 (S.D.N.Y. Feb. 3, 2017) ("The fact that a higher level manager's recommendation may be more important or that an employee may not make the ultimate decision regarding another employee's change in status does not preclude a finding that the employee's recommendation[s] were given particular weight.").  (*See* Buzzard Reply Decl., Ex. A at 25-27).  Moreover, in contrast to her equivocal answer about Mr. Morfogen, Ms. Wasserman was confident that Mr. Rojas hired Mr. Maldonado based on Mr. Rojas's direct conversation with her and her personal knowledge of their friendly relationship.  (*Compare* Buzzard Reply Decl., Ex. A at 27 (Ms. Wasserman answering "[p]ossibly" and "I don't know" in response to the question of whether Mr. Morfogen could have hired Mr. Maldonado), *with id.* at 22-23 (Ms. Wasserman explaining that Mr. Rojas "brought [Mr. Maldonado] in" and told her that Mr. Maldonado "will be working here")).

In addition, Mr. Rojas contends that Ms. Wasserman could not recall the specific names of other employees hired by Mr. Rojas, and that there is no documentary evidence of Mr. Rojas exercising his hiring authority.  (Pl. Reply 5-7).  Nevertheless, Ms. Wasserman explained during her deposition that "it's been over five years, so [she] c[ouldn't] remember every name" hired by Mr. Rojas.  (Buzzard Reply Decl., Ex. A at 35-36).  Moreover, the records maintained by the restaurant do not "identify who hired or fired the person," meaning that there is no documentary evidence of anyone ever exercising his or

11

her hiring or firing authority. (*Id.* at 37). Indeed, the Court finds it reasonable that this practice "is often the reality of the hospitality industry[,] where work needs to be completed at a fast pace and turnover is high." (Def. Sur-Reply 4).

*Second*, regarding the Times Square location, Defendants point to the declaration of Chad Leo, the general manager of that location since 2023. (Leo Decl. ¶ 4; Def. Opp. 8-10). Mr. Leo testified that Mr. Rojas "hired numerous dishwashers and runners" and "also disciplined and fired numerous kitchen employees" based on his personal interactions with Mr. Rojas, who asked Mr. Leo to add or remove specific individuals to or from the work schedule. (Leo Decl. ¶¶ 12-13). In addition, Mr. Leo gave the specific names of Jorge Barranco, Eduardo Barranco, Javier Veliz, Graviel Orlando Yatz Ac, Jose Q. Xol Choc, and Wilson Enrique Valencia Nunez as examples of individuals hired by Mr. Rojas. (*Id.* ¶¶ 9-10, 12). Finally, Mr. Leo explained that there are no documents showing Mr. Rojas's involvement in the hiring process at the Times Square location because only the general manager or the assistant general manager filled out the employment paperwork, even though managers of specific departments were in charge of hiring employees in their departments. (*Id.* ¶ 11).

Mr. Rojas characterizes parts of Mr. Leo's testimony as unreliable hearsay and contradictory, but even so, the Court finds that the remainder of Mr. Leo's testimony is sufficient to raise a genuine dispute of fact. (*See* Pl. Reply 7-9). Indeed, even if the Court were to disregard the specific hiring of Jorge Barranco, Eduardo Barranco, and Javier Veliz, of which Mr. Rojas claims

that Mr. Leo had no direct and personal knowledge, Mr. Leo's declaration still makes clear that he personally took Mr. Rojas's recommendations as to which individuals to hire and fire, including Mr. Ac, Mr. Choc, and Mr. Nunez, whose hiring Mr. Rojas did not address in his briefing.  (Leo Decl. ¶ 12; *see* Pl. Reply 7-8, 9 n.1).  Again, just because Mr. Leo held a higher managerial position than Mr. Rojas and could have "overridden" Mr. Rojas's employment decisions "does not mean [that Mr. Rojas was] restricted or prohibited from making the decisions in the first place."  *Tamayo*, 2017 WL 532460, at *8 (internal quotation marks omitted) (quoting *Nickell* v. *City of Lawrence*, 352 F. Supp. 2d 1147, 1161 (D. Kan. 2004)).

In sum, based on the testimonies of Ms. Wasserman and Mr. Leo, a reasonable jury could conclude that Mr. Rojas had the authority to hire or fire employees at both Brooklyn Chophouse locations — or, at the very least, that his suggestions were given particular weight.  Therefore, this genuine dispute of material fact prevents the Court from granting summary judgment in favor of Mr. Rojas on the issue of the "bona fide executive" employee exemption.

### 2. The Individual Defendants Operated as Joint Employers

Under both the FLSA and the NYLL, a defendant must meet the definition of an "employer" to be held liable on wage and hour claims.  *See Herman* v. *RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (describing the FLSA's definition of an employer as "expansive"); *Spicer* v. *Pier Sixty LLC*, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010) (explaining that courts have treated the definition of "employer" under the NYLL as coextensive with the definition

13

used by the FLSA). Where there are multiple defendants, "[t]he joint employer doctrine, along with the 'single employer' (or 'single integrated employer') doctrines 'have been developed to allow a plaintiff to assert employer liability in the employment discrimination context against entities that are not her formal, direct employer.'" *Griffin* v. *Sirva Inc.*, 835 F.3d 283, 292 (2d Cir. 2016) (quoting *Barbosa* v. *Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 216 (S.D.N.Y. 2010)).

As relevant here, the joint employer doctrine applies "where two [or more] employers 'handle certain aspects of their employer-employee relationship jointly.'" *Griffin*, 835 F.3d at 292 (quoting *Fowler* v. *Scores Holding Co.*, 677 F. Supp. 2d 673, 681 (S.D.N.Y. 2009)). Courts in this Circuit apply the "economic reality" test to ascertain "whether the alleged [joint] employer possessed the power to control the workers in question," considering factors such as "whether the alleged employer [i] had the power to hire and fire the employees, [ii] supervised and controlled employee work schedules or conditions of employment, [iii] determined the rate and method of payment, and [iv] maintained employment records." *Herman*, 172 F.3d at 139 (quoting *Carter* v. *Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). In particular, the Second Circuit has instructed that none of these considerations — also known as the *Carter* factors — should be applied rigidly, as they constitute "a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Irizarry* v.

*Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Barfield* v. *N.Y.C. Health and Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008)).

Here, Mr. Rojas argues that the individual Defendants — Mr. Thomas, Mr. Morfogen, and Mr. Cummins — are liable as joint employers with the two restaurant entities that employed him. (Pl. Br. 14-19). To start, on the first *Carter* factor, Mr. Rojas proffers evidence that the three individual Defendants "unquestionably had and exercised the power to hire" and fire employees, especially managerial ones. (*Id.* at 16-17). For example, they collectively hired the first general manager of the City Hall location; Mr. Thomas had a decision-making role in the hiring of the chef at the City Hall location; and Mr. Thomas and Mr. Cummins hired Mr. Leo as the general manager of the Times Square location. (Pl. 56.1 ¶¶ 4, 9, 23). In addition, Mr. Morfogen hired Mr. Rojas at the City Hall location, and the three collectively hired and fired Mr. Rojas at the Times Square location in 2022. (*Id.* ¶¶ 29, 124-125). Defendants do not dispute those factual statements, and the Court accepts them as true. (Def. 56.1 Resp. ¶¶ 4, 9, 23, 29, 124-125). In particular, the Court emphasizes that "the hiring and firing of 'individuals who were in charge of [lower-level employees] is a strong indication of control.'" *Irizarry*, 722 F.3d at 114 (quoting *Herman*, 172 F.3d at 140).

Next, Mr. Rojas points to evidence of the third and fourth *Carter* factors, namely that the three individual Defendants determined the rate and method of payment and also maintained employment records. (Pl. Br. 18-19). Indeed,

15

Mr. Thomas and Mr. Cummins retained authority over Mr. Rojas's specific salary, a fact Defendants do not dispute. (Pl. 56.1 ¶¶ 15-16; Def. 56.1 Resp. ¶¶ 15-16). All three individuals set the general compensation range for restaurant employees, leaving the decision of "where within that range each employee [would] be paid" to the general manager of the specific location. (Pl. 56.1 ¶ 126; *see* Def. 56.1 Resp. ¶ 126 (disputing Mr. Rojas's statement only as to salaried employees and acknowledging that the three individuals set pay rates for hourly employees)). And at least Mr. Morfogen and Mr. Cummins were consulted on the general manager's decision to retain a payroll company, which in turn maintained employment records. (Pl. Br. 19; Pl. 56.1 ¶ 123; *see* Def. 56.1 Resp. ¶ 123 (explaining that Mr. "Morfogen testified that it was not part of his job duties to retain a payroll company [but] that he thought a general manager would have had to confer with [Mr.] Cummins and him, but not [Mr.] Thomas")). Defendants have failed to set forth specific facts showing a genuine dispute over these factors, and the Court notes that even if Mr. Thomas did not participate in the payroll company decision, "that this fourth factor is not met is not dispositive." *Herman*, 172 F.3d at 140.

Finally, on the second *Carter* factor, which seems to be the only factor that Defendants meaningfully contest, Mr. Rojas contends that "all three individual Defendants [were] directly involved in the management and operations of both restaurants in ways that directly affect[ed] the conditions of employment." (Pl. Br. 17-18; *see* Def. Opp. 12-13). Mr. Rojas claims that Mr. Morfogen "met with the general manager of the City Hall location on a weekly

16

basis to discuss management of the restaurant," and Defendants do not dispute this fact. (Pl. 56.1 ¶ 30; Def. 56.1 Resp. ¶ 30). Rather, Defendants primarily take issue with the involvement of Mr. Thomas and Mr. Cummins in the "day-to-day operations" of the restaurant locations. (Def. Opp. 12-13). Specifically, Defendants argue that those two individuals visited the restaurant locations infrequently and had limited interactions with Mr. Rojas in particular. (*Id.*). But even if that were true, control over the conditions of employment "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees." *Herman*, 172 F.3d at 139. At the very least, Mr. Thomas and Mr. Cummins determined employment conditions at a high level.

More critically, because "[n]o one of the four factors standing alone is dispositive," *Herman*, 172 F.3d at 139, the Court believes that the totality of the circumstances — that is, the three individual Defendants' authority over hiring, firing, compensation, and other critical employment matters — points strongly toward control. Put differently, no reasonable jury could conclude based on the entirety of Mr. Rojas's undisputed evidence that the three individual Defendants did not "possess[ ] the power to control the workers in question," which the Second Circuit has described as "the overarching concern" of the economic reality test. *Id.* As a result, the Court grants summary judgment in favor of Mr. Rojas on the issue of the three individual Defendants' joint liability as employers.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment is GRANTED in part and DENIED in part.

The parties are directed to file a joint letter proposing next steps on the remaining claims on or before **March 12, 2026**.

The Clerk of Court is directed to terminate the pending motion at docket entry 36.

SO ORDERED.

Dated: February 26, 2026
New York, New York

　　　　　　　　　　　　　　　　　　　*Katherine Polk Failla*
　　　　　　　　　　　　　　　　　　　―――――――――――――――――
　　　　　　　　　　　　　　　　　　　KATHERINE POLK FAILLA
　　　　　　　　　　　　　　　　　　　United States District Judge